**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0169-22

ANTHONY ACCARDI,
PAUL BOSCO, PATRICK
BOSWORTH, DAVID COLLINS,
individually and on behalf of all
others similarly situated,

      Plaintiffs-Appellants,

v.

MGC-RSC, INC., n/k/a
ROCK SPRING CLUB, INC.,
a New Jersey non-profit
corporation, and
MONTCLAIR GOLF CLUB,
a New Jersey non-profit
corporation,

      Defendants-Respondents.

_____

      Argued February 13, 2024 – Decided March 14, 2024

      Before Judges Whipple, Enright and Paganelli.

      On appeal from the Superior Court of New Jersey, Law
      Division, Somerset County, Docket No. L-0355-21.

Gary Steven Graifman and Robert S. Dowd, Jr. argued the cause for appellants (Kantrowitz Goldhamer & Graifman, PC, and Law Offices of Robert S. Dowd, Jr., LLC, attorneys; Gary Steven Graifman, Robert S. Dowd, Jr., and Daniel C. Edelman, on the briefs).

Mark Evan Duckstein argued the cause for respondents (Sills Cummis & Gross PC, attorneys; Mark Evan Duckstein, of counsel and on the brief).

PER CURIAM

This case arises from efforts of plaintiffs—Anthony Accardi, Paul Bosco, Patrick Bosworth, and David Collins—to secure compensation for their former memberships in the Rock Spring Club (RSC or the Club) golf club. The trial court granted summary judgment to defendants. We affirm.

RSC, a private country club in West Orange, owned a 138-acre property with a clubhouse. RSC offered various activities to its members, including access to an eighteen-hole golf course. RSC was governed by a fifteen-member Board of Governors (RSC Board) and had written by-laws (By-Laws). In 2015, RSC could no longer support itself financially and discussed a potential merger with Montclair Golf Club (MGC). RSC considered selling its property and dissolving the club; however, after weighing the options, the RSC Board decided a merger with MGC was preferable to selling its property.

As a result, on October 19, 2015, RSC and MGC executed a letter of intent (LOI), outlining a merger of the two golf clubs. RSC and MGC began negotiating the terms of a merger agreement. During negotiations, MGC discovered RSC's financial position was more precarious than originally stated, and it was agreed MGC would commit to operating the RSC property for three years, as opposed to the five years set forth in the LOI.

On November 19, 2015, the RSC Board provided information regarding the terms of the proposed merger to its members. RSC's members voted in favor of the merger on December 19, 2015. In accordance with RSC's By-Laws, approval of the merger required a two-thirds vote of RSC's eligible voting members. The final vote count tallied "125 votes in favor, [one] affirmative vote against, and 18 non-voting members (87% approval)." MGC's members also voted to approve the merger, and the Merger Agreement was signed on December 31, 2015. As a result of the merger, RSC was eliminated, and MGC-RSC, Inc. (the Merged Club) became a wholly owned subsidiary of MGC.

Under the Merger Agreement, RSC members became MGC members and continued to use the former RSC facility in West Orange. In addition, the Merger Agreement provided the Merged Club would maintain RSC's property for a minimum of three years, including payment of the mortgage and RSC's

other outstanding debts. In the event RSC's property was sold within that three-year period, the Merger Agreement provided converted-RSC members would have an economic interest in any net proceeds from such a sale. Conversely, they would not have an interest in the proceeds from any sale of RSC property completed more than three years after the merger. The Merger Agreement expressly provided MGC owed no "responsibility for liabilities due to RSC [r]esignees . . . or other former and current RSC [m]embers" except as provided in the document.

The Merger Agreement also required MGC to "either replace or assume RSC's indebtedness that [wa]s secured by a mortgage on RSC['s]" property. The estimated amount of the mortgage at the time was $3.75 million. Based on RSC's prior financial difficulties and to facilitate payment of RSC's debts, in October 2018, MGC decided to refinance the RSC property. As part of the refinancing, "title to the RSC property was conveyed from RSC to MGC by [d]eed dated October 30, 2018, and recorded on November 8, 2018." The property transfer had no impact on the operation of RSC's facilities. Title to the property was transferred in exchange for $1.

By late 2018, the financial situation of the Merged Club had not improved. It became apparent the Merged Club could no longer retain and operate RSC's

4

property. By that time, a majority of former RSC members had resigned from the Merged Club to avoid paying annual dues for the next year in accordance with the terms of the Merger Agreement. Prior to taking any action, MGC asked its members what should be done with RSC's property. Sixty-eight percent of the responding MGC members favored selling RSC's property.

In January 2019, MGC retained a commercial real estate broker to market RSC's property. Before MGC listed RSC's property for sale, the Township of West Orange asked MGC to delay so Essex County and the Township could discuss acquiring the property. Ultimately, the Township—without Essex County's participation—agreed to purchase RSC's property for $11 million. The Township and MGC signed a written contract of sale in late March 2019, and RSC's property was officially sold to the Township on April 18, 2019—more than three years after the date of the Merger Agreement.

On June 11, 2019, twenty-six former members of RSC/MGC-RSC filed a lawsuit against MGC-RSC/Rock Spring Club, Inc.—Dean v. Rock Spring Club, Inc., No. ESX-L-4329-19 (Law Div. Nov. 8, 2019)—alleging claims of conversion, unjust enrichment, promissory estoppel, breach of the Merger Agreement, fraud in the inducement/common law fraud, and breach of fiduciary duty of good faith. MGC-RSC/Rock Spring Club, Inc. moved for summary

judgment, arguing that these former members had been members during the merger and, as such, were subject to the Merger Agreement that eliminated the legal effect of the prior RSC governing documents on which they based their claims. The trial judge granted summary judgment to defendants on the <u>Dean</u> plaintiffs' claims seeking pro rata distribution based on RSC's <u>dissolution</u> or <u>liquidation</u>, as neither required triggering event had occurred. "Rock Spring Club did not undergo a dissolution and did not liquidate its assets[;] it simply merged with MGC." The <u>Dean</u> trial judge further held that—although MGC-RSC's transfer of the RSC property to MGC for $1 was indeed a sale that might have triggered an increase in the value of "each MGC Share issued to a holder of an RSC Share"—the "deeding of the property yielded no funds" that might be distributed to the <u>Dean</u> plaintiffs under the Merger Agreement. We upheld the trial judge's decision "for the reasons expressed by [the <u>Dean</u> trial judge] in his cogent and thorough memorandum opinion." <u>Dean v. Rock Spring Club, Inc.</u>, No. A-1256-19 (App. Div. Mar. 19, 2021) (slip op. at 2).[1]

---

[1] Although citing an unpublished decision is generally forbidden, we do so here to provide a full understanding of the issues presented pursuant to <u>Rule</u> 1:36-3 that permits citation "to the extent required by res judicata, collateral estoppel, the single controversy doctrine[,] or any other similar principle of law."

Plaintiffs herein brought this suit, asserting they are situated differently from the Dean plaintiffs. Between 2001 and 2009, plaintiffs each purchased a Resident Membership in RSC for $8,000, in exchange for which they received Ownership Certificates (OCs). As an example, Accardi's OC—dated June 27, 2006—"certifie[d] that [he was] the owner of one certificate of [RSC], and as such, [was] entitled, in event of dissolution or liquidation of [RSC], to share equally in the property and assets of [RSC] . . . ." The OC further stated Accardi had "all of the rights and privileges, and is subject to all of the duties and obligations, of a Certificate Holder, as such rights, privileges, duties[,] and obligations are, from time to time, defined in the By-Laws of [RSC]." Finally, the OC stated that it was "non-negotiable and transferable only upon the books of [RSC], in accordance with its By-Laws and upon surrender of this [c]ertificate."

Between 2012 and 2014, before the Merger Agreement, plaintiffs individually resigned their membership in RSC by either submitting their OCs to RSC for redemption or confirming their OC was on the RSC redemption list, as described in the By-Laws. Article VI, Section 4 of the By-Laws provided that a member's resignation must "be accompanied by the [OC] endorsed for transfer."

7

Plaintiffs all resigned at least one year before RSC's membership voted overwhelmingly in favor of the merger on December 19, 2015.

Plaintiffs initiated the current action on March 11, 2021, by filing their complaint in which they raise the following claims asserting a right to pro rata distribution: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) violation of the New Jersey Consumer Fraud Act (NJCFA); (4) tortious interference with contractual relations; (5) fraudulent transfer in violation of N.J.S.A. 15A:14-10; (6) unlawful distributions; (7) conversion; and (8) unjust enrichment. Plaintiffs also allege with regard to their right to reimbursement of the $8,000 they paid for OCs: (9) violation of the NJCFA for monies paid for OCs; (10) violation of the NJCFA for a refund pursuant to N.J.S.A. 56:8-2.11; and (11) breach of implied covenant of good faith and fair dealing.

Defendants answered, and plaintiffs served interrogatories as well as a notice to produce documents. Defendants did not engage in discovery.

Instead, defendants moved for summary judgment and included with their motion a statement of material facts (SOMF). Plaintiffs filed their responses to defendants' SOMF and their individual certifications in opposition. On March 17, 2022, the trial court heard arguments and issued an order, accompanied by a

comprehensive statement of reasons, granting summary judgment to defendants on plaintiffs' counts one through ten, and denying summary judgment on count eleven.

On April 6, 2022, plaintiffs moved for reconsideration of that portion of the order that granted summary judgment on counts one through ten. Defendants opposed and cross-moved for reconsideration of that portion of the order that denied summary judgment on count eleven. After a hearing, the trial court denied both. By agreement filed on August 3, 2022, the parties stipulated to plaintiffs' dismissal with prejudice of count eleven of the complaint, thus finalizing judgment in the underlying litigation.

This appeal followed.

We review a motion for summary judgment de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted if "there is no genuine issue as to any material fact . . . [and] the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). "When no issue of fact exists, and only a question of law remains, [an appellate court] affords no special deference

A-0169-22

to the legal determinations of the trial court." Ibid. (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"Motions for reconsideration are governed by Rule 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015).

Plaintiffs assert two separate rights attach to their status as former members of RSC. One is to a pro rata distribution of the net value of RSC's property and assets upon the dissolution or liquidation of RSC. This claim arises from the OC each former member once held, which states on its face: "This certifies that [member] is the owner of one certificate of [RSC], and as such, is entitled, in event of dissolution or liquidation of [RSC], to share equally in the property and assets of [RSC] . . . ." Also, Article XVII of the By-Laws provides that "[i]n the event of dissolution, the net assets after payment of all debts shall be distributed pro rata among the holders of record of the outstanding [OCs] issued by the Club in accordance with their [c]ertificate holdings."

The second purported right is to the redemption of the value of their OCs, which each plaintiff surrendered to the Club (or in another manner confirmed for redemption) upon resigning their memberships. This right is incorporated

by reference on each OC that grants to the holder "all of the rights and privileges . . . of a Certificate Holder, as such rights[ and] privileges . . . are, from time to time, defined in the By-Laws of the Club." Under the By-Laws,

> [u]pon termination of a Certificate Holding Membership, the [OC] . . . shall be available for acquisition by the Club for resale to any person who is duly entitled to Resident Membership. The certificate shall be lodged with the Treasurer of the Club, accompanied by appropriate documents to effect transfer, to be resold only after the sale of all other [OCs] lodged earlier for resale with the Treasurer. The Club shall pay for each [OC] so lodged with the Treasurer an amount equal to that total amount which the member paid for the [OC]. <u>Payment shall be made under this Section to the former registered owner of a[n] [OC] or his legal representatives only as and when the proceeds are received by the Club from resale of such [OC]</u>.
>
> [(Emphasis added).]

Both parties agree plaintiffs were not members of RSC at the time of the merger. Where they diverge is whether plaintiffs are bound by the Merger Agreement, being former members when the merger was approved. In our view, they are.

As former members of RSC, plaintiffs assert—unlike the disappointed plaintiffs in the <u>Dean</u> litigation—they "were not involved in the Merger Agreement and could not be bound by a Merger Agreement to which they did

11

not agree."

When plaintiffs originally bought into RSC and accepted their OCs to signify their membership, they agreed to be bound by the governing documents of RSC. See Loigman v. Trombadore, 228 N.J. Super. 437, 449-50 (App. Div. 1988) ("[T]he constitution and by-laws of a voluntary association become a part of the contract entered into by a member who joins the association.").

Under these governing documents, "two-thirds of the Certificate Holding Members" could vote to approve actions that would change fundamental characteristics of the Club, including the "distribution of any assets of the Club," the "sale of any lands of the Club," as well as the "dissolution of the Club." Also under these governing documents, a member may tender their resignation to the Club secretary, but "no such resignation shall be accepted or shall become effective unless the resigning member . . . has lodged their [OC] with the Treasurer as provided in Section 5 of ARTICLE VI of the[] By-Laws, or has transferred it . . . ." Finally, once a member surrenders their OC to the Club so that their name may be placed on the redemption list, they are no longer permitted to vote; the By-Laws provide that "[a]ll Certificate Holding Members are entitled to vote in person or by proxy at any meeting of the Club, except for [m]embers on the redemption list."

A-0169-22

Together, these provisions show that fundamental changes to the Club may be made by agreement of two-thirds of voting members, and resigning members would be unable to vote if they had already tendered their resignations prior to the vote. That possibility is built into the By-Laws and was implicitly accepted by plaintiffs when they joined RSC. "Having voluntarily submitted to the rule of the corporate majority, all members are thereby bound and are barred from seeking judicial redress unless the corporate rule or action complained of contravenes the certificate of incorporation, [New Jersey] law[,] or strong public "policy" of [this] State." Loigman, 228 N.J. Super. at 450 (first and third alterations in original) (quoting Leon v. Chrysler Motors Corp., 358 F. Supp. 877, 885 (D.N.J.), aff'd o.b., 474 F.2d 1340 (3d Cir. 1973)). Having voluntarily submitted to the By-Laws of RSC upon joining, plaintiffs are bound by actions taken by the corporation pursuant to those By-Laws.

Thus, plaintiffs are subject to the terms of the Merger Agreement, despite not being members of RSC at the time of the merger and not voting on, or agreeing to be bound by, the merger.

Plaintiffs also assert the trial court erred in holding that "[p]laintiffs' claimed right to a pro rata share upon dissolution or liquidation of RSC ceased with the existence of RSC." Plaintiffs argue this holding is "directly contrary to

13

N.J.S.A. 15A:10-6(e) . . . and is wholly inconsistent with the uniform holdings of the New Jersey Supreme Court and Appellate, Chancery[,] and Law Divisions interpreting this statutory provision and the parallel provision applicable to for-profit corporations." Plaintiffs argue their pro rata distribution right survives even the demise of RSC as an entity. It does not.

What plaintiffs ask us to overlook is that their purported right to pro rata distribution was granted by RSC and tied directly to RSC's dissolution or liquidation. The OC states the owner of the certificate "is entitled, in event of dissolution or liquidation of the Club, to share equally in the property and assets of the Club." "In the event of dissolution or liquidation" is a stated condition of the right of distribution. The right of distribution was not granted "upon any event that results in the elimination of the Club as an entity." If that had been the case, the pro rata distribution right could very well have survived the merger. But the condition, as stated on the face of the OC was "in the event of dissolution or liquidation." Neither event occurred, so the right was not triggered.

Further, after the merger—even if RSC had continued to exist, which it did not—RSC did not have any property or assets to liquidate; they had all been vested in MGC-RSC/Rock Spring Club, Inc. upon the merger.

Plaintiffs assert, however, that RSC's assets were, in fact, fully liquidated,

14

because they first vested in MGC-RSC under the merger, then were transferred to MGC for $1, and finally were sold to the Township of West Orange, with the proceeds going to MGC. Further, as a backstop, they rely on MGC-RSC's subsequent dissolution to logically argue that, if not dissolved before then, RSC was certainly necessarily dissolved at that point.

However, the dissolution and liquidation rights identified in the RSC By-Laws and OCs were contingent upon the condition precedent that RSC actually dissolve or liquidate. Such dissolution or liquidation became a legal impossibility when the merger extinguished the existence of RSC. Plaintiffs argue, in effect, their dissolution/liquidation rights attached to the former RSC property itself and became an obligation of any entity that owned such property. Nothing in the record supports that argument.

Plaintiffs further contend, although they are former members of RSC, they retain ownership of their OCs until those certificates are redeemed for $8,000. Plaintiffs then assert "[b]oth the [p]ro [r]ata [r]ights and the By-[l]aws [r]edemption [r]ights are contractual obligations not conditioned on the owner of the OC being a member of RSC" and that these continuing rights to compensation make appellants creditors of RSC.

Whether plaintiffs remained owners of their OCs, though, is irrelevant to

15

the issues before this court.

Upon reconsideration, the trial court judge determined plaintiffs "are not creditors in terms of their perceived right to receive a share of RSC upon liquidation or dissolution." "MGC-RSC, Inc. became liable for the obligations of RSC, which included the obligation to redeem the $8,000 of [plaintiffs' OCs]. This does not include, however, the obligation to pay [plaintiffs] a share of RSC upon dissolution or liquidation."

Plaintiffs' purported rights to a pro rata distribution of RSC's assets upon the corporation's dissolution or liquidation does not survive the merger, for reasons amply explained above. Plaintiffs are, therefore, not creditors insofar as those claims are concerned. Even if those claims had survived the merger, the pro rata distribution right cannot be considered a creditor's right, because the pro rata distribution of net assets necessarily occurs after creditors are paid.

Redemption rights, on the other hand, were explicitly addressed in the Merger Agreement and assumed as liabilities by MGC-RSC: "[T]he Surviving Corporation's responsibility for liabilities due to RSC Resignees . . . or other former and current RSC Members shall be limited as set forth herein." As such, MGC-RSC/Rock Spring Club, Inc. already assumed liability for plaintiffs' redemption rights—under very particular conditions not challenged on appeal—

16

so they need not be denoted as creditor claims to confirm plaintiffs' redemption rights with respect to MGC.

In conclusion, we discern nothing in the record presented demonstrating error on the part of the trial judge for determining plaintiffs are not entitled to pro rata distribution from RSC's former property or to accelerated redemption rights. Any remaining arguments raised by the parties are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0169-22